FILED
2020 Jan-02  PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **JOLENE GUNTER HASTINGS AS THE ADMINISTRATOR OF THE ESTATE OF KATHLEEN TAYLOR GUNTER,** ) | ***JURY TRIAL IS REQUESTED*** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO.:** _____ |
| ) | |
| **ADVANCED CORRECTIONAL HEALTHCARE, INC., MARLEE BELL, KIMBERLY HOLMES, KATELYN PAYNE, TERRY SCOTT, KATHY GAY, SARAH GARDNER, TALIA RUSSELL, MIKE HALE, FORMER JEFFERSON COUNTY SHERIFF, and JEFFERSON COUNTY, ALABAMA;** ) | |
| ) | |
| **Defendants.** ) | |

---

## COMPLAINT

---

### (Parties, Jurisdiction and Venue)

1.     All paragraphs, allegations, counts, and prayers for relief herein are to be incorporated in and read together with all others.

2.     Plaintiff, Jolene Gunter Hastings, is an individual over the age of nineteen (19) years and is a resident of Jefferson County, Alabama. She is the surviving biological sibling, and Personal Representative of the Estate, of Kathleen

Taylor Gunter. Letters Testamentary were granted to Jolene Gunter Hastings on May 18, 2018 by the Probate Court of Jefferson County, Alabama (Case No. 18BHM01159), the county of Kathleen Taylor Gunter's residence at the time of death. Kathleen Taylor Gunter, deceased, is hereinafter referred to as "Ms. Gunter."

3.      Defendant, Advanced Correctional Healthcare, Inc. (hereinafter "ACH") is an Illinois corporation that, at all pertinent times referred to herein, contracted with Jefferson County to supply the Jefferson County Jail with nurses to provide inmates with health screenings and necessary medical care.

4.      Defendant, Jefferson County, Alabama is an Alabama public corporation. It can be served by and through, the Jefferson County Commission, at 716 Richard Arrington Jr. Blvd. N. Ste. 240 Birmingham, AL 35203. Jolene Gunter Hastings as the administrator of Kathleen Gunter's estate filed/served a verified notice of claim on the Jefferson County Commission[1] on January 4th, 2019 via hand-delivery. Further, Jefferson County, Al is responsible for funding the Jefferson County Jail, including medical care at the jail and it is responsible for the care and safety of inmates housed in the jail. It contracted with Defendant ACH to provide medical services at the Jefferson County Jail.

5.      Defendant, Mike Hale, was the Jefferson County Sheriff at all relevant times. As the sheriff, among other things, he was responsible for management of the

---

[1] Plaintiff also served Jefferson County Sheriff's Department and Jefferson County Jail.

Jefferson County Jail. Defendant had a statutory duty under Alabama law to attend to the medical needs of inmates in the Jefferson County Jail.

6.      Defendants, Kimberly Holmes, Katelyn Payne, Marlee Bell, and Talia Russell were deputies of Jefferson County Sheriff's Department and were employed by Jefferson County at all relevant times.

7.      Defendant, Sergeant Terry Scott, at all times relevant to this lawsuit has been a jailer, holding the rank of Sergeant with the Jefferson County Sheriff's Department and has worked at the Jefferson County Jail.

8.      Defendants Nurse Kathy Gay and Nurse Sarah Gardner were employed by ACH during the events made the basis of this lawsuit. All of their actions in connection to Kathleen Gunter as further set herein were done within the course and scope of their employment with ACH.

9.      The term "Defendant" used herein refers to each and all defendants, including Jefferson County, AL and ACH, as well as their respective personnel, agents and employees. At all times relevant herein, the defendants acted alone and/or in concert with other defendants or others, are liable to Plaintiff jointly and severally, and all actions and conduct herein described proximately caused or contributed to Plaintiff's demise.

10.      At all times relevant herein, all defendants which are corporations or legal entities, acted through agents, employees, and officers, who were acting within

the line and scope of their agency or employment or authority; the acts and conduct of said persons were at all times ratified and approved by defendants, and done for the benefit of defendants.

11.    The actions, inactions and/or events giving rise to the Plaintiff's claims occurred wholly within the geographical boundaries of Jefferson County, Alabama, which lies within the Northern District, Southern Division.

12.    This action involves alleged violations of civil rights and federal law pursuant to the eighth and fourteenth amendments under the United States Constitution, 42 U.S.C. § 1983, and the laws of the State of Alabama. Specifically, the defendants were deliberately indifferent to Kathleen Gunter's, medical needs in violation of her rights as a detainee under the eight and fourteenth amendments.  This Court has jurisdiction over such claims pursuant to 28 U.S.C. § 1343(3) and 28 U.S.C. § 1331. All other claims, including those based in state tort law, are properly brought pursuant to this Court's ancillary jurisdiction (28 U.S.C. § 1367).

13.    Jurisdiction and venue are proper in this Court.

**STATEMENT OF FACTS**

14.    Plaintiff incorporates by reference the relevant, consistent statements and claims of the preceding paragraphs as if set forth fully, herein.

15.    ACH is a for profit medical provider that contracts with counties to provide medical care to incarcerated persons. Under its contractual agreements,

ACH covers the cost of providing medical care to inmates, up to a certain cap. The county is then responsible for covering all costs in excess of the cap.

16.     The Corrections Division of Jefferson County Sheriff's Department otherwise referred to as the Jefferson County Jail is responsible for housing incarcerated persons awaiting trial or transfer to the State of Alabama's Department of Corrections. All such persons are housed at two facilities located within Jefferson County, Alabama. At all pertinent times herein, Jefferson County Sheriff's Department operated the Jefferson County Jail located at 809 Richard Arrington Jr. Blvd. N., Birmingham, Alabama 35203.

17.     At all pertinent times herein, ACH contracted with Jefferson County to provide inmates with necessary medical care. In particular, ACH was responsible for conducting intake medical screenings in order to determine whether new inmates are under the influence of intoxicants, suffering from substance use disorder, suffering from psychiatric illness, have a history of pertinent medical conditions and/or are exhibiting signs of suicidal ideation, plan, and/or intent.

18.     On January 5, 2018 at approximately 1:11 p.m., Ms. Gunter was booked at the Jefferson County Jail in connection with a misdemeanor drug offense.

19.     Approximately two hours later, Ms. Gunter underwent a medical screening with an ACH nurse practitioner. During Ms. Gunter's medical screening, it was noted that she suffered from seizures, insomnia, depression and anxiety for

which, she had either been admitted to a mental health facility or was currently receiving mental health services. It was also noted that Ms. Gunter was currently under the care of two physicians and was being prescribed the following medications: Lexapro (antidepressant and/or anti-anxiety medication), Klonopin (benzodiazepine that serves as an anti-seizure medication), Neurontin (also anti-epileptic medication) and Trazodone (antidepressant medication).

20.    During the cognitive assessment portion of Ms. Gunter's intake medical screening, the ACH nurse noted that Ms. Gunter was slow to respond with slowed speech that was difficult to understand. Her behavior was described as distracted, her affect was flat, and her balance and gait appeared slowed and guarded. The ACH nurse opined that Ms. Gunter was medicated or under the influence of substances.

21.    Jefferson County Sheriff Department personnel and/or ACH was/were in possession of Ms. Gunter's intake medical screening from January of 2013[2], which reflected a history of opiate dependency and a prescription for Methadone (opiate used to treat withdrawal syndrome). The January 2013 screening also reflected a history of anxiety, which was treated with Ativan (benzodiazepine).

22.    Following Ms. Gunter's January 5, 2018 medical screening, she was placed in the general population holding cell. During this time, Ms. Gunter allegedly repeatedly flushed the holding cell commodes, causing flooding.

---

[2] Performed at Jefferson County Jail in connection with an unrelated arrest.

23.     At approximately 4:49 p.m., Ms. Gunter was allegedly combative and involved in a physical altercation with Jefferson County personnel including Deputy Payne and Deputy Holmes during which, she was wrestled to the ground. She was thereafter escorted to cell block level five.

24.     At approximately 4:52 p.m., Ms. Gunter was placed in cell A10 located on level 5. Cell A10 was equipped with a closed-circuit television camera.

25.     Level 5 included a series of television monitors referred to as "the Cube", where at least one JCSD deputy was stationed to observe the closed-circuit feed and monitor level 5 inmates.

26.     Ms. Gunter remained in cell A10, alone, the remainder of January 5, 2018 and throughout the better part of January 6, 2018.

27.     Upon information and belief, at no time was Ms. Gunter administered any of her known, necessary medications.

28.     Upon information and belief, at no time was Ms. Gunter administered any medications for withdrawal syndrome.

29.     Upon information and belief, Ms. Gunter was exhibiting withdrawal symptoms as well as psychotic behavior.

30.     Upon information and belief, at no time was Ms. Gunter reassessed by ACH personnel or psychology or psychiatry staff members.

31.    On January 6, 2018 at approximately 3:22 p.m., Ms. Gunter began ripping her bed sheet in an attempt to fashion a noose.

32.    At approximately 3:36 p.m., Ms. Gunter stood on a table and tied the bed sheet to sprinkler pipework located on the ceiling.

33.    At approximately 3:37 p.m., Ms. Gunter tied the remainder of the bed sheet around her neck, stood on the table and attempted to hang herself. She failed.

34.    At approximately 3:39 p.m., Ms. Gunter again stood on the table and attempted to hang herself. She succeeded.

35.    Thirty-nine (39) minutes later, at 4:18 p.m., Deputy Bell entered Ms. Gunter's cell and discovered her body hanging from the piping.

36.    From the time that Ms. Gunter began fashioning a noose until the time that her body was discovered, fifty-six (56) minutes elapsed.

37.    During most, if not all of the fifty-six minutes timeframe, the Jefferson County Sheriff deputies, Deputy Russell and Deputy Bell, responsible for monitoring the closed-circuit television feed had abandoned their post at the Cube.

38.    During the fifty-six minutes preceding her discovery, no Jefferson County Deputy physically inspected Ms. Gunter's cell.

39.    Upon information and belief, Jefferson County Deputies named herein, and Jefferson County failed to properly evaluate and access the mental and physical

condition of Ms. Gunter during its screening procedure as is required by Jefferson County Sheriff's policy and procedures.

40.     Upon such information and belief, such officers did also fail to monitor the video, but failed to remove bedding and other items that could be used to self-inflict harm, that was imminent and foreseeable.

41.     Such failures were in violation of clearly established customs, procedures, laws, rules, and checklists.

42.     As a result of the Defendant's conduct, Ms. Gunter died in the custody, control and responsibility of the Defendants.

43.     Ms. Gunter's death was easily preventable by the Defendants.

**COUNT ONE**
**Violation of Alabama Medical Liability Act –**
**Advanced Correctional Healthcare, Inc.**

44.     Plaintiff incorporates by reference the relevant, consistent statements and claims of the preceding paragraphs as if set forth fully, herein.

45.     On January 5, 2018, ACH was responsible for conducting Ms. Gunter's medical screening in order to determine whether Ms. Gunter was under the influence of intoxicants, suffering from substance use disorder, suffering from psychiatric illness, had a history of pertinent medical conditions and/or was exhibiting signs of suicidal ideation, plan, and/or intent.

46.     On January 5, 2018 and/or January 6, 2018, ACH knew that Ms. Gunter appeared intoxicated, medicated and/or otherwise under the influence of substances. ACH also knew that Ms. Gunter had a known history of opiate use disorder.[3] ACH breached the applicable standard of care by failing to perform a laboratory evaluation including blood work, chemistry panel and urine toxicology testing. ACH also breached the standard of care by failing to evaluate the possibility of Ms. Gunter's substance dependence and failing to monitor or reassess her in order to identify any symptoms of withdrawal syndrome and thus prevent harm to Ms. Gunter.

47.     On January 5, 2018 and/or January 6, 2018, ACH knew that Ms. Gunter was under the influence of substances, had a known history of opiate use disorder and was exhibiting conduct consistent with withdrawal syndrome. ACH knew or should have known that the frequency of suicide attempts is substantially higher among patients with a substance use disorder and that frequent reassessment is indicated during the withdrawal period. ACH breached the applicable standard of care by failing to frequently reassess Ms. Gunter, failing to identify her obvious signs of withdrawal syndrome and failing to take appropriate measures to ameliorate Ms. Gunter's signs and symptoms of withdrawal. ACH also breached the applicable standard of care by failing to administer adequate doses of medication to counteract withdrawal symptoms.

---

[3] ACH had access to Ms. Gunter's prior intake medical screens, which were maintained by JCSD.

48.     On January 5, 2018 and/or January 6, 2018, ACH knew that Ms. Gunter was prescribed Klonopin, a benzodiazepine. ACH knew or should have known that Ms. Gunter's known history of seizure disorder should be considered when withholding or tapering benzodiazepines. ACH breached the applicable standard of care by withholding necessary medication from Ms. Gunter.

49.     On January 5, 2018 and/or January 6, 2018, ACH knew or should have known that Ms. Gunter's known psychiatric conditions placed her at a greater risk for severe withdrawal symptoms and complications. ACH knew or should have known that Ms. Gunter was likely to experience significant psychological distress during detoxification, including the development of suicidal ideation, plan, and intent. Yet ACH breached the applicable standard of care by failing to implement an appropriate detoxification plan, failing to consult with psychology and/or psychiatry staff, failing to appropriately monitor Ms. Gunter and/or undertake frequent reassessment of her condition and failing to administer adequate doses of necessary medications in a timely manner.

50.     On January 5, 2018 and/or January 6, 2018, ACH breached applicable standards of care in its provision of medical care to Ms. Gunter by, *inter alia*: Failing to properly and/or appropriately assess Ms. Gunter's state of severe psychological distress; Failing to have a competent and/or qualified examiner perform an assessment and evaluation of Ms. Gunter to identify the urgent and severe state of

psychological distress Ms. Gunter was in; Failing to seek an immediate psychiatric evaluation for psychiatric treatment or stabilization and/or evaluation for transfer to inpatient psychiatric care; Failing to take into account Ms. Gunter's psychiatric history and other factors that demonstrated the urgent and severe state of psychological distress Ms. Gunter was in; Failing to conduct additional screening of Ms. Gunter's emergency psychiatric medical condition; Failing to stabilize Ms. Gunter's emergency psychiatric medical condition and ensure that stabilization was maintained for a safe period of time; Failing to communicate with Ms. Gunter's known physicians who could report on her medication needs and history; Failing to communicate with Ms. Gunter's significant others and family members who could report on her specific symptoms, triggers, and behaviors; Failing to promptly and adequately treat Ms. Gunter's severe psychological distress; Failing to effectuate a timely screening, evaluation, and/or transfer to a facility that could provide a higher level of care to Ms. Gunter.

51.    ACH breached applicable standards of care by failing to adequately and properly hire, train, educate, validate or supervise the individual nurse practitioners, medical providers, staff, agents or employees who participated in Ms. Gunter's care and treatment with respect to the standards of care which Plaintiff has alleged were breached in this count of Plaintiff's Complaint.

52.     ACH breached applicable standards of care by failing to enact policies, procedures, practices, guidelines, standards, programs or other institutional controls necessary to prevent the breaches of the standard of care Plaintiff has alleged were breached in this count of Plaintiff's Complaint.

53.     The breaches of the applicable standards of care by ACH combined and concurred with the negligent, wanton or otherwise wrongful conduct of all Defendants to proximately cause Ms. Gunter's demise, as set forth herein.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and upon final hearing hereof, be granted Judgment against the Defendants for all damages recoverable under Alabama's Wrongful Death Statute, *to wit*, Ala. Code § 6-5-410 (1975), in an amount in excess of the jurisdictional requirements of this Honorable Court, as well as all allowable costs of Court, prejudgment interest, post-judgment interest, attorney's fees and all other relief to which Plaintiff may show herself justly entitled.

## COUNT TWO
### Deliberate Indifference to Medical Needs: 42 U.S.C. § 1983[4]
### (Direct Liability Claim against Nurse Gay, Nurse Gardiner, Deputy Bell, Deputy Russell, Deputy Payne and Deputy Holmes)

54.     Plaintiff incorporates by reference the relevant, consistent statements

---

[4] The Fourteenth Amendment's guarantee of due process, rather than the Eighth Amendment's prohibition of cruel and unusual punishment, applies to pretrial detainees such as Ms. Gunter. *See Snow v. City of Citronelle*, Ala., 420 F. 3d 1262, 1268 (11th Cir. 2005). However, Fourteenth Amendment standards mirror those of the Eighth Amendment. *Estate of Tessier v. Sheriff of Monroe County*, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005).

and claims of the preceding paragraphs as if set forth fully, herein.

55.    The individual Defendants, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Ms. Gunter's serious medical needs noted as follows:

        a.      Extensive history of psychiatric disorders, including insomnia, depression, and anxiety;

        b.      Seizure disorder;

        c.      Opiate and other drug dependency and withdrawal syndrome.

56.    While the individual Defendants acted under the pretense and color of law. The Defendants' actions were beyond their authority, beyond the scope of their jurisdiction, and uncompliant with the law.

57.    The individual Defendants, the ACH Nurses, and the Deputies and other assisting officers all subjectively knew of Ms. Gunter's serious medical needs, the need for immediate serious medical, and the foreseeable consequences of not adequately treating these serious medical needs, took no action or took clearly inadequate, cursory action, so as to amount to no treatment, prevented her from receiving necessary and appropriate treatment and care, and were so grossly incompetent and as to deprive Ms. Gunter's rights as a pretrial detainee under the Fourteenth Amendment of the Constitution of the United States in violation of 42 U.S.C. § 1983.

58.     On January 5, 2018 and/or January 6, 2018, Defendants had subjective

knowledge that Ms. Gunter:

      a.     Appeared intoxicated, medicated and/or otherwise under the influence of substances;

      b.     Had a known history of opiate use disorder and was displaying symptoms of withdrawal syndrome;

      c.     Suffered from known psychiatric conditions including depression and anxiety for which, she had either been admitted to a mental health facility or was currently receiving mental health services;

      d.     Suffered from suicidal thoughts and behaviors;

      e.     Suffered from seizure disorder and insomnia;

      f.     Was currently under the care of two physicians for psychiatric disorders;

      g.     Was being prescribed Lexapro, Klonopin, Neurontin and Trazodone; and

      h.     Was exhibiting conduct consistent with psychiatric distress.

59.     Defendants knew that Ms. Gunter's known psychiatric conditions

placed her at a greater risk for severe withdrawal symptoms and complications that

could cause serious harm. Defendants knew that there was a strong likelihood that

Ms. Gunter would experience significant psychological distress during

detoxification, including the development of suicidal ideation, plan, and intent.

Defendants also knew that Ms. Gunter had a history of suicidal ideation and

exhibited behaviors consistent with suicidal ideation. Yet Defendants disregarded

all risks of harm and/or death by intentionally ignoring Ms. Gunter's obvious signs of withdrawal and psychiatric distress, failing to take any measures whatsoever to implement an appropriate detoxification plan, failing to undertake any reassessments of Ms. Gunter's declining condition, failing to administer any indicated withdrawal syndrome medications and/or psychiatric medications and failing to consult with psychology and/or psychiatry staff. Defendants simply placed Ms. Gunter in an isolation cell with total indifference to the strong likelihood that self-infliction of harm would occur.

60.     On January 5, 2018 and/or January 6, 2018, after placing Ms. Gunter in an isolation cell, Defendants knew that she would experience significant psychological distress during detoxification, including the development of suicidal ideation, plan, and intent.

61.     Defendants displayed deliberate indifference to Ms. Gunter's wellbeing by failing to evaluate the possibility of Ms. Gunter's substance dependence and failing to monitor or reassess her in order to identify any symptoms of withdrawal syndrome and thus prevent harm to Ms. Gunter.

62.     Defendants displayed deliberate indifference to Ms. Gunter's taking of her own life. The defendant's displayed a deliberate indifference, by (1) subjectively knowing of a risk of serious harm; (2) disregarding that risk; and (3) by conduct that is more than mere negligence as set forth below.

63.    On January 5, 2018 and/or January 6, 2018, Defendants Nurse Gay, Nurse Gardiner, Deputy Holmes and Deputy Payne knew that Ms. Gunter was under the influence of substances, had a known history of opiate use disorder, was exhibiting conduct consistent with withdrawal syndrome, and had a history of suicidal thoughts and behaviors. The individual Defendants inflicted cruel and unusual punishment upon Ms. Gunter with deliberate indifference to her wellbeing by failing to identify Ms. Gunter's obvious signs of withdrawal syndrome and failing to take appropriate measures to ameliorate Ms. Gunter's signs and symptoms of withdrawal. The individual Defendants were also deliberately indifferent to her obvious withdrawal syndrome by failing to administer adequate doses of medication and/or undertake frequent reassessment of Ms. Gunter's condition.

64.    On January 5, 2018 and/or January 6, 2018, the Deputies, Nurses, and Jefferson County Sheriff inflicted cruel and unusual punishment upon Ms. Gunter with deliberate indifference to her wellbeing as demonstrated by its:

   a.    Failure to take into account Ms. Gunter's psychiatric history and other factors that demonstrated the urgent and severe state of psychological distress Ms. Gunter was experiencing;

   b.    Failure to properly and/or appropriately assess Ms. Gunter's state of severe psychological distress;

   c.    Failure to have a competent and/or qualified examiner perform an assessment and evaluation of Ms. Gunter to identify the urgent and severe state of psychological distress Ms. Gunter was experiencing;

d.   Failure to provide Ms. Gunter with necessary medications during her most desperate and vulnerable time of need of psychological distress;

e.   Failure to test her blood or urine for the presence of substances known to cause potentially harmful withdrawal symptoms;

f.   Failure to provide Ms. Gunter with medications that would ameliorate her withdrawal symptoms;

g.   Failure to recognize that Ms. Gunter's exhibited behaviors, speech, gait and combativeness were indicative of suicidal ideation, plan and intent;

h.   Failure to recognize that Ms. Gunter's known psychiatric conditions placed her at a greater risk for severe withdrawal symptoms and complications and made her likely to experience significant psychological distress during detoxification, including the development of suicidal ideation, plan, and intent;

i.   Failure to remove clothing and bedding from Ms. Gunter's cell that could be used to fashion a noose or otherwise cause harm to Ms. Gunter;

j.   Failure to actively and regularly observe the television monitor corresponding to Ms. Gunter's cell in order to thwart any suicide attempts;

k.   Failure to abide by the correct policies regarding a combative inmate;

l.   Disregarding the Jefferson County policies and bringing Ms. Gunter to Level 5 instead of the 3rd or 4th level despite her behavior and obvious medical needs;

m.   Failure to physically check Ms. Gunter's isolation cell every fifteen minutes as required by written Jefferson County Jail protocol;

n.    Failure to act when they had notice of Deputy Kimberly Holmes, Deputy Katelyn Payne, and Sgt. Terry Scott's propensity to abuse their authority;

o.    Failure to have a policy in place to prevent this behavior or follow their own rules and a failure to implement or institute a Constitutionally compliant policy or procedure governing such situations. Such actions or omissions were willful or malicious or were aggravated in nature and constituted a conscious or callous indifference to my Constitutional rights.

65.    As a result of the Defendants' deliberate indifference to, and deprivation of, Ms. Gunter's Constitutional and civil rights, the Plaintiff spiraled into a state of severe psychological distress, experienced sleep deprivation, suffered from extreme, uncontrolled withdrawal syndrome and ultimately took her own life.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and upon final hearing hereof, be granted Judgment against the Defendants for all damages recoverable under Alabama's Wrongful Death Statute, *to wit*, Ala. Code § 6-5-410 (1975), in an amount in excess of the jurisdictional requirements of this Honorable Court, as well as all allowable costs of Court, prejudgment interest, post-judgment interest, attorney's fees and all other relief to which Plaintiff may show herself justly entitled.

## COUNT THREE
### Deprivation of Life Without Due Process in Violation of the Fourteenth Amendment; 42 U.S.C. § 1983

66.    Plaintiff incorporates by reference the relevant, consistent statements and claims of the preceding paragraphs as if set forth fully, herein.

67.     Defendants deprived Ms. Gunter of her rights, privileges, and immunities secured by the Constitution of the United States, the laws of the United States, the Constitution of the State of Alabama, and the common law of the State of Alabama through their deliberate indifference to Ms. Gunter's taking of her own life.

68.     Defendants acted under the pretense and color of law. However, Defendants' actions were beyond their authority, beyond the scope of their jurisdiction, and without the authority of law.

69.     As a direct or proximate result of Defendants' conduct and actions, Defendants deprived Ms. Gunter of her rights, privileges, and immunities secured by the Constitution and laws of the United States, the Constitution of the State of Alabama, and the common law of the State of Alabama.

70.     As a direct or proximate result of the Defendants' deliberate indifference to, and deprivation of, Ms. Gunter's Constitutional and civil rights, the Plaintiff spiraled into a state of severe psychological distress, experienced sleep deprivation, suffered from extreme, uncontrolled withdrawal syndrome and ultimately took her own life.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and upon final hearing hereof, be granted Judgment against the Defendants for all damages recoverable under Alabama's Wrongful Death Statute, *to wit*, Ala. Code § 6-5-410 (1975), in an amount in excess

of the jurisdictional requirements of this Honorable Court, as well as all allowable

costs of Court, prejudgment interest, post-judgment interest, attorney's fees and all

other relief to which Plaintiff may show herself justly entitled.

### COUNT FOUR
### Negligence action Against ACH

71.     Plaintiff incorporates by reference the relevant, consistent statements

and claims of the preceding paragraphs as if set forth fully, herein.

72.     On January 5, 2018 and/or January 6, 2018, Defendant ACH owed Ms.

Gunter a duty to perform a routine health screening in order to identify symptoms of

intoxication, substance use dependency, psychiatric distress, medication

dependency and/or withdrawal syndrome.

73.     At the aforesaid time, ACH also owed Ms. Gunter a duty to provide her

with necessary medications, monitor her condition, follow detoxification protocol,

protect her from withdrawal syndrome and take reasonable precautions to prevent

her from harming herself.

74.     At the aforesaid time, ACH owed Ms. Gunter a duty to correlate her

behavior, speech, gait and symptoms with what any reasonable person would suspect

was indicative of suicidal ideations, plan or intent.

75.     Defendant ACH knew or should have known that Ms. Gunter exhibited

signs of withdrawal syndrome, was in a state of extreme psychological distress and

was suicidal. Defendant ACH negligently breached all duties owed to Ms. Gunter

by failing to prevent or treat withdrawal syndrome, failing to provide medications to ameliorate withdrawal syndrome, failing to reassess Ms. Gunter, failing to recognize her suicidal ideation, plan or intent and/or otherwise failing to implement measures to prevent her from harming herself.

76.     As a direct or proximate result of Defendant ACH's negligence, the Plaintiff spiraled into a state of severe psychological distress, experienced sleep deprivation, suffered from extreme, uncontrolled withdrawal syndrome and ultimately took her own life.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and upon final hearing hereof, be granted Judgment against the Defendants for all damages recoverable under Alabama's Wrongful Death Statute, *to wit*, Ala. Code § 6-5-410 (1975), in an amount in excess of the jurisdictional requirements of this Honorable Court, as well as all allowable costs of Court, prejudgment interest, post-judgment interest, attorney's fees and all other relief to which Plaintiff may show herself justly entitled.

## COUNT FIVE
### Negligence- Jefferson County

77.     This cause of action is asserted against Jefferson County and the Officers pursuant to the Alabama common law tort of negligence as modified by statutes of the Alabama Legislature.

78.    Plaintiff incorporates by reference all factual allegations in the preceding paragraphs.

79.    Jefferson County negligently funded the Jefferson County Jail for the reasons stated above.

80.    The Deputies negligently, carelessly, and/or unskillfully assessed Ms. Gunter.

81.    They knew or should have known that Ms. Gunter needed medical attention. However, they negligently (a) monitored Ms. Gunter, (b) ignored Ms. Gunter's medical needs, (c) placed too much reliance on ACH and its supervisors and employees, and/or (d) delayed and denied Ms. Gunter's treatment.

82.    The Officers did not "act in compliance with law" under the meaning of Ala. Code § 14-6-1 because they not only violated the U.S. Constitution (as stated above), they also violated Ala. Code § 14-6-19 by failing to provide Ms. Gunter with medical care for her serious medical needs. The Deputies also did not "act in compliance with law" under Ala. Code § 14-6-1 because they acted beyond their authority by failing to follow nondiscretionary orders, rules, regulations, statutes, checklists, and/or policies of the State of Alabama, of Jefferson County, and/or of the Jefferson County Sheriff. For these same reasons, the Deputies are not entitled to State-agent immunity.

83.     As a direct and proximate cause of the combining and concurring negligent correctional care of Jefferson County and the Officers (and the combining and concurring wrongful conduct of the other Defendants), resulted in Ms. Gunter's death.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests this Honorable Court (1) to enter judgment against Jefferson County and the Deputies, (2) to award the Plaintiff compensatory damages from these Defendants in an amount determined by the jury, (3) to award the Plaintiff court costs and interest from these Defendants, and (4) to award Plaintiff other relief from these Defendants as the Court deems just and proper.

## COUNT SIX
### 42 U.S.C. § 1983 Supervisory Liability Claim- Against Sgt. Terry Scott and Sheriff Mike Hale

84.     Plaintiff incorporates by reference the relevant, consistent statements and claims of the preceding paragraphs as if set forth fully, herein.

85.     Defendant Mike Hale, established, created, condoned, ratified and encouraged customs, policies, patterns and practices that directly and proximately caused the deprivation of the civil and constitutional rights of the deceased, as alleged herein, and the damages and injuries described herein, in violation of the Eighth, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C § 1983.

86.     These written and unwritten policies, customs, patterns, and practices included:

    a.    Inadequate, improper, and unreasonable screening, treatment, monitoring and supervision of the serious medical and psychiatric needs of persons in custody;

    b.    Inadequate, improper, and unreasonable screening, treatment, monitoring and supervision of the needs of those persons in custody suffering from substance abuse disorder;

    c.    Inadequate, improper, and unreasonable screening, treatment, monitoring and supervision of the needs of persons in custody exhibiting withdrawal syndrome;

    d.    Inadequate, improper, and unreasonable screening procedures of risks of serious harm occurring to detainees;

    e.    Inadequate and unreasonable sick call, referral, and follow-up procedures relative to the serious medical and psychiatric needs of persons in custody;

    f.    The failure to properly monitor detainees who are locked into cells both by in-person checks and/or properly monitored video surveillance;

    g.    Inadequate and unreasonable on-site medical and psychiatric staffing and coverage;

    h.    Hiring of inadequately trained and supervised and inexperienced person to screen and monitor person in the custody of Jefferson County Sheriff's Department;

    i.    Hiring of inadequately trained persons to render medical and psychiatric treatment and/or care to persons in custody;

    j.    Inadequate training, supervision, and discipline of medical personnel responsible for screening, diagnosis, and treatment of medical conditions at Jefferson County Jail;

k.  Inadequate hiring, training and supervision of officers and supervisors responsible for the observation and monitoring of detainees and the identification and communication of serious medical needs of persons in custody to appropriate medical personnel;

l.  A pattern and practice of ignoring detainees' requests and needs for medical and/or psychiatric treatment, including the need for proper medications, and/or failing to properly monitor detainees who are treated, causing serious pain, suffering, injury, and/or death;

m.  Inadequate, deficient, or non-existent treatment plans for patients who were suicidal and experiencing significant mental illness;

n.  Inadequate quality control policies, procedures, and practices;

o.  Inadequate critical incident review; inadequate mortality reviews; and

p.  Inadequate identification and correction of serious deficiencies in policy practices affecting the delivery and quality of medical and psychiatric services.

87.  Defendant Sgt. Terry Scott had a duty to monitor, supervise, counsel, discipline the deputies and/or correctional officers at the Jefferson County Jail.

88.  Defendant was aware of Ms. Gunter's condition, but intentionally, knowingly, or recklessly denied her medical treatment by violating policies and procedures that would have prevented Ms. Gunter's death such as:

a.  Failing to observe or inspect an inmate's injuries and determine if medical personnel should be called or if the detainee shall be taken to a hospital after an altercation with deputies;

      b.     Failing to act and directly supervise a detainee that is being restrained by deputies;

      c.     Failing to transfer or directly supervise the transfer of a disruptive detainee such as Ms. Gunter to the correct cell.

89.     Defendant Mike Hale and Defendant Terry Scott acted with deliberate indifference to Ms. Gunter's medical needs and disregarded the constitutional and civil rights to the life and safety of Ms. Gunter. Such acts and omissions were in violation of the law and were the proximate cause of the death of Ms. Gunter.[5]

## COUNT SEVEN
### Wantonness

90.     Plaintiff incorporates by reference the relevant, consistent statements and claims of the preceding paragraphs as if set forth fully, herein.

91.     On January 5, 2018 and/or January 6, 2018, Defendant ACH knew or should have known that Ms. Gunter exhibited signs of withdrawal syndrome, was in a state of extreme psychological distress and was suicidal, as aforesaid.

92.     However, Defendant ACH made the conscious decision to withhold withdrawal medications from Ms. Gunter with a total disregard for her safety.

---

[5] In the context of failure to provide medical care, the Northern District of Alabama has stated sheriffs and jailers can lose immunity status if his or her actions are found to be uncompliant with the law. *Bell v. Advanced Corr. Healthcare, Inc.*, 2016 U.S. Dist. Lexis 173247, *13-14 citing *Hobbs v. Powell*, 138 F. Supp. 3d 1328 (N.D. of Ala. 2015). The court further noted that the "law" might encompass jail regulations and procedures as well as constitutional or statutory requirements. Bell v. *Bell v. Advanced Corr. Healthcare, Inc.*, 2016 U.S. Dist. Lexis 173247, *13-14 citing *Hobbs v. Powell*, 138 F. Supp. 3d at 1338-39.

93.    Defendant ACH made the conscious decision to withhold necessary anti-depression medication, anti-anxiety medication and sleep-deprivation medication from Ms. Gunter with a total disregard for her safety.

94.    Defendant ACH also made the conscious decision to allow Ms. Gunter to be isolated with access to bedsheets and clothing in disregard for her known suicidal tendencies.

95.    As a direct or proximate result of Defendant ACH's conscious decisions, the Plaintiff spiraled into a state of severe psychological distress, experienced sleep deprivation, suffered from extreme, uncontrolled withdrawal syndrome and ultimately took her own life.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and upon final hearing hereof, be granted Judgment against the Defendants for all damages recoverable under Alabama's Wrongful Death Statute, *to wit*, Ala. Code § 6-5-410 (1975), in an amount in excess of the jurisdictional requirements of this Honorable Court, as well as all allowable costs of Court, prejudgment interest, post-judgment interest, attorney's fees and all other relief to which Plaintiff may show herself justly entitled.

## COUNT EIGHT
### *Respondeat Superior*/Vicarious Liability

96.    Plaintiff incorporates by reference the relevant, consistent statements and claims of the preceding paragraphs as if set forth fully, herein.

97.     On the date of the incident forming the basis of this action, Defendants were the principal and/or employer of Nurses Kathy Gay and Sarah Gardiner.

98.     At the time of the occurrence forming the basis of the Plaintiff's Complaint, Defendant ACH was acting as the agent, servants and/or employee of Defendant.

99.     At the time of the occurrence forming the basis of the Plaintiff's Complaint, Defendants Kathy Gay and Sarah Gardiner were acting within the line and scope of their employment with Defendant.

100.    As a result of the foregoing, Defendant ACH is vicariously liable to Plaintiff for the negligent, reckless, or wanton conduct of its employees, who proximately caused the injuries of Ms. Gunter.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein and upon final hearing hereof, be granted Judgment against the Defendants for all damages recoverable under Alabama's Wrongful Death Statute, *to wit*, Ala. Code § 6-5-410 (1975), in an amount in excess of the jurisdictional requirements of this Honorable Court, as well as all allowable costs of Court, prejudgment interest, post-judgment interest, attorney's fees and all other relief to which Plaintiff may show herself justly entitled.

Respectfully Submitted,

_____
Brandon T. Bishop (ASB-8035-D52B)
Attorney for Plaintiff

**OF COUNSEL:**

SHUNNARAH INJURY LAWYERS, P.C.
2900 1st Avenue South
Birmingham, Alabama 35233
Phone:        (205) 983-8137
Facsimile:   (205) 983-8437
Email:         bbishop@asilpc.com
Paralegal:    Jennifer Brewer: jbrewer@asilpc.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JOLENE GUNTER HASTINGS AS THE ADMINISTRATOR OF THE ESTATE OF KATHLEEN TAYLOR GUNTER,** | ) <br> ) <br> ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| **v.** | )   **CASE NO.: _____** <br> ) |
| **ADVANCED CORRECTIONAL HEALTHCARE, INC., MARLEE BELL, KIMBERLY HOLMES, KATELYN PAYNE, TERRY SCOTT, KATHY GAY, SARAH GARDNER, TALIA RUSSELL, MIKE HALE, FORMER JEFFERSON COUNTY SHERIFF, and JEFFERSON COUNTY, ALABAMA;** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| **Defendants.** | ) |

## <u>JURY DEMAND</u>

COMES NOW the Plaintiff and hereby demands a trial by struck jury.

Respectfully Submitted,

_____
Brandon T. Bishop (ASB-8035-D52B)
Attorney for Plaintiff

**OF COUNSEL:**

SHUNNARAH INJURY LAWYERS, P.C.
2900 1st Avenue South
Birmingham, Alabama 35233
Phone:         (205) 983-8137
Facsimile:    (205) 983-8437
Email:         bbishop@asilpc.com
Paralegal:    Jennifer Brewer: jbrewer@asilpc.com

## REQUEST FOR SERVICE BY CLERK

Pursuant to ARCP 4.1 and 4.2, Plaintiff requests service of the foregoing

"Summons and Amended Complaint" by certified mail, addressed as follows:

Advanced Correctional Health Care, Inc.
c/o C T Corporation System
2 NORTH JACKSON ST., SUITE 605
MONTGOMERY, AL 36104

Mike Hale
110 Sunny Brook Ln.
Trussville, AL 35173

Katelyn Payne
Jefferson County Sheriff's Dept.
2200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL 35203

Kathy Gay
Jefferson County Jail
809 Richard Arrington Jr. Blvd N.
Birmingham, AL 35203

Sarah Gardiner
Jefferson County Jail
809 Richard Arrington Jr. Blvd N.
Birmingham, AL 35203

Talia Russell
Jefferson County Sheriff's Dept.
2200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL 35203

Marlee Bell
Jefferson County Sheriff's Dept.
2200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL 35203

Kimberly Holmes
Jefferson County Sheriff's Dept.
2200 Rev. Abraham Woods, Jr. Blvd.
Birmingham, AL 35203

Terry Scott
Jefferson County Jail
809 Richard Arrington Jr. Blvd N.
Birmingham, AL 35203

Jefferson County
Jefferson County Commission
716 Richard Arrington Jr. Blvd. N, Ste. 240
Birmingham, AL 35203

_____
OF COUNSEL