UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOLENE GUNTER HASTINGS, as the Administrator of the Estate of Kathleen Taylor Gunter, | ) ) ) ) | |
| Plaintiff, | ) ) | Case Number: 2:20-cv-00002-JHE |
| v. | ) ) | |
| ADVANCED CORRECTIONAL HEALTHCARE, INC., et al., | ) ) ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Jolene Gunter Hastings ("Plaintiff" or "Hastings"), as Administrator of the Estate of Kathleen Taylor Gunter ("Gunter"), brings this action against the following defendants: Advanced Correctional Healthcare, Inc. ("ACH"), Deputy Marlee Bell, Deputy Kimberly Holmes, Deputy Katelyn Payne, Sergeant Terry Scott, Nurse Kathy Gay, Nurse Sara Gardiner,[2] Deputy Talia Russell, Former Jefferson County Sheriff Mike Hale, and Jefferson County, Alabama. (Doc. 1). Hastings' complaint asserts the following claims: (Count 1) Violation of Alabama Medical Liability Act Against defendant ACH (*id.* at 9-13); (Count 2) Deliberate Indifference to Medical Needs (Fourteenth Amendment) Pursuant to 42 U.S.C. §1983 (direct liability) Against defendants Nurse Gay, Nurse Gardiner, Deputy Bell, Deputy Russell, Deputy Payne, and Deputy Holmes (*id.* at 13-19); (Count 3) Deprivation of Life Without Due Process (Fourteenth Amendment) Pursuant to 42 U.S.C. § 1983 Against all defendants (*id.* at 19-21); (Count 4) State Law Negligence Against

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 28).

[2] Incorrectly identified in the Complaint and as "Sarah Gardner." (Doc. 34 at 1).

1

defendant ACH (*id.* at 21-22); (Count 5) State Law Negligence Against defendant Jefferson County, Alabama (*id.* at 22-24). (Count 6) Supervisor Liability Claim Pursuant to 42 U.S.C. § 1983 Against defendants Sgt. Scott and Former Sheriff Hale (*id.* at 24-27); (Count 7) State Law Wantonness Against defendant ACH (*id.* at 27-28); (Count 8) State Law *Respondeat Superior*/Vicarious Liability Against ACH (*id.* at 28-29).

Defendants ACH and Nurse Gay have moved to dismiss all claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 17). Separately, defendant Sara Gardiner moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). (Doc. 34). The motions are fully briefed. (Docs. 18, 24, 25 & 36). For the reasons stated below, the motions (docs. 17 & 34) are **GRANTED**.

## I. Factual Allegations[3]

Hastings' complaint asserts claims against ACH as well as Nurse Gay and Nurse Gardiner, who were employed by ACH at the Jefferson County Jail at the time Gunter died by suicide on January 6, 2018, one day after being booked into the Jefferson County Jail. (Doc. 1). According to the complaint, at approximately 1:11 p.m. on January 5, 2018, Gunter was booked into the Jail in connection with a misdemeanor drug offense. (*Id.* at ¶ 18). Approximately two hours later, Gunter underwent a medical screening by an unnamed ACH nurse practitioner. (*Id.* at ¶ 19). During Gunter's medical screening, it was noted that she suffered from seizures, insomnia, depression and anxiety for which, she had either been admitted to a mental health facility or was currently receiving mental health services. (*Id.*). It was noted that Gunter was currently under the

---

[3] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, the "facts" are taken directly from the complaint.

care of two physicians and was being provided the following medications: Lexapro (antidepressant and/or anti-anxiety medication), Klonopin (benzodiazepine as anti-seizure medication), Neurontin (anti-epileptic medication), and Trazodone (antidepressant medication).  (*Id.*).  During the cognitive assessment portion of Gunter's intake medical screening, the ACH nurse practitioner noted that Gunter was slow to respond with slowed speech that was difficult to understand.  (*Id.* at ¶ 20).  Gunter's behavior was described as distracted, her affect was flat, and her balance and gait appeared slow and guarded.  (*Id.*).  The ACH nurse practitioner opined that Gunter was medicated or under the influence of substances.  (*Id.*).

Defendants Nurse Gay and Nurse Gardiner were employed by ACH during the events made the basis of this lawsuit.  (Doc. 1 at ¶ 8).  All of their actions in connection with Gunter were done within the course and scope of their employment with ACH.  (*Id.*).

Following her medical screening, Gunter was placed in the general population holding cell.  (Doc. 1 at ¶ 22).  During this time, Gunter repeatedly flushed the toilets, causing flooding.  (*Id.*).  At 4:49 p.m., Gunter was involved in a physical altercation with Deputy Payne and Deputy Holmes during which Gunter was wrestled to the ground.  (*Id.* at ¶ 23).  Gunter was then placed in cell A10 alone, where she was supposed to have been monitored by deputies using a series of closed-circuit television monitors.  (*Id.* at ¶¶ 24-25).

At approximately 3:22 p.m. on January 6, 2018, Gunter began ripping her bed sheet.  (Doc. 1 at ¶ 31).  At approximately 3:36 p.m., Gunter stood on a table and tied the bed sheet to sprinkler pipework located on the ceiling.  (*Id.* at ¶ 32).  At approximately 3:37 p.m., Gunter tied the remainder of the bed sheet around her neck, stood on the table, and attempted to hang herself; she failed.  (*Id.* at ¶ 33).  At approximately 3:39 p.m., Gunter again stood on the table and attempted to hang herself; this time, she succeeded.  (*Id.* at ¶ 34).  From the time Gunter began constructing

a noose until the time her body was discovered at 4:18 p.m., fifty-six minutes elapsed. (*Id.* at ¶¶ 35-36). During the fifty-six minutes, Gunter prepared to commit suicide by ripping her bed sheet and made two attempts, the deputies responsible for monitoring the television feeds had abandoned their post. (*Id.* at ¶ 37).

At all relevant times, ACH contracted with Jefferson County to provide inmates with necessary medical care. (Doc. 1 at ¶ 17). Specifically, ACH was responsible for conducting intake medical screenings to determine whether new inmates are under the influence of intoxicants, suffering from substance abuse disorder, suffering from psychiatric illness, have a history of pertinent medical conditions and/or are exhibiting signs of suicidal ideation, plan, and/or intent. (*Id.*).

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557).

Rule 12(b)(6), Fed. R. Civ. P., permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id. See also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. Analysis

#### A. Claims Against ACH

Hastings asserts several claims against ACH, including violation of the Alabama Medical Liability Act ("AMLA"), violation of Due Process pursuant to §1983, negligence, wantonness, and *respondeat superior*. (Doc. 1). ACH contends all are due to be dismissed for failure to state a claim. (Doc. 18).

##### 1. Plaintiff's Alabama Medical Liability Act ("AMLA"), Negligence, and Wantonness Claims

Plaintiff's negligence and wantonness claims asserted against ACH are both governed by AMLA, ALA. CODE § 6-5-480 *et seq.* (1975); ALA. CODE § 6-5-551 (1975), which "applies in any action for injury or damages or wrongful death, whether in contract or tort, against a healthcare provider for breach of the standard of care." *Mock v. Allen*, 783 So. 2d 828, 832 (Ala. 2000) (internal quotations omitted). AMLA applies to health care providers such as ACH. A "healthcare provider" is "any professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services." ALA. CODE § 6-5-481(8). Thus, no independent negligence or wantonness claims can be stated against ACH (or

5

Nurse Gay or Nurse Gardiner) as a matter of law.[4]

As to the medical malpractice claim asserted against ACH pursuant to the AMLA, recovery for failure to prevent a suicide by a medical care provider depends upon whether the defendant reasonably should have anticipated that the deceased would attempt to harm herself. *Keebler v. Winfield Carrawy Hosp.*, 531 So. 2d 841, 845 (Ala. 1988). Foreseeability is legally sufficient if the deceased had a history of suicidal proclivities or manifested suicidal proclivities in the presence of the defendant or was admitted to the facility of the defendant because of a suicide attempt. *Keeton v. Fayette Cnty.*, 558 So. 2d 884, 887 (Ala. 1989) (citing *Keebler*, 531 So. 2d at 845). In *Patton v. Thompson*, the Alabama Supreme Court described the facts as presented in *Keebler* as follows:

> This Court first addressed a caregiver's duty to guard against a patient's suicide in *Keebler v. Winfield Carraway Hospital*, 531 So.2d 841 (Ala. 1988). In *Keebler*, a rescue squad was summoned to assist a man lying in a bed complaining of chest pains. They took the man to the emergency room, and the emergency-room physician diagnosed him as suffering from probable alcohol abuse, possible drug abuse, and chest pains. The man's son said the man had been drinking and that he could have ingested the sedative Valium, so the emergency room physician pumped the man's stomach to prevent an overdose. The emergency-room physician also administered nitroglycerin to alleviate the chest pains and attempted to admit the man to the hospital. When the man continued to act disorderly and refused to enter his hospital room, the emergency-room physician contacted the police. The police told the man he would have to go to his room and, if he did not, that he would be taken to jail. The man refused to obey, and he was taken into custody. A couple of hours later, the man was found dead in a jail cell; he had hung himself by tying one end of a T-shirt around his neck and the other to a bar of the jail door.

958 So. 2d 303, 307 (Ala. 2006). The *Keebler* court explained:

> In the case *sub judice*, [the wife] failed to introduce any evidence indicating that [the physician] should have reasonably foreseen her husband's suicide. Although [the wife's expert] testified that the combined effects of alcohol and Valium pose a calculable risk that a patient may attempt suicide, this evidence does not create an

---

[4] Plaintiff acknowledges this in her brief: "Plaintiff's claim against Defendant ACH . . . as well as Plaintiff's claim against ACH's nurses . . . is one for medical malpractice, which is governed by the Alabama Medical Liability Act. *See* Ala. Code § 6-5-551." (Doc. 24 at 8).

6

> inference that [the husband]'s suicide should have been reasonably foreseen by [the physician]. [The wife] had the burden to show through expert testimony that [the physician] breached his duty to exercise such reasonable care, diligence, and skill as reasonably competent physicians in the national medical community ordinarily would in the same or similar circumstances. ALA. CODE 1975, 6-5-484(a). *Drs. Lane, Bryant, Eubanks & Dulaney v. Otts*, 412 So.2d 254 (Ala. 1982); *Dobbs v. Smith*, 514 So.2d 871 (Ala. 1987). [The wife] predicates her malpractice claim on the theory that [the physician] should have foreseen her husband's imminent self-destruction and then should have taken precautionary measures to prevent it from happening.
>
> …
>
> Moreover, the record did not indicate that [the husband] had a history of suicidal proclivities, that he manifested suicidal proclivities while at the hospital, or that he was admitted due to a suicide attempt. Arguably, such facts as these, if known to [the physician], would have rendered the contingency of suicide reasonably foreseeable. *See* Knuth, *Civil Liability for Causing or Failing to Prevent Suicide*, 12 Loy. L. A. L. Rev. 967, 991 (1979).

*Keebler*, 531 So.2d at 845. Thus, applying *Keebler*, "the duty of the emergency-room physician owed to the deceased did not include a standard of care to protect against or to prevent suicide, because there was an absence of factors that would have made the patient's suicide foreseeable, thereby triggering such a duty." *Patton*, 958 So. 2d at 309.

### a. Assessing Foreseeability at the Motion to Dismiss Phase

Plaintiff first argues the motion to dismiss should be denied because foreseeability is a factual issue that should not be resolved in a Rule 12(b)(6) motion. (Doc. 24 at 5). Generally speaking, "[f]oreseeability is an issue for the jury to resolve." *Thetford v. City of Clanton*, 605 So. 2d 835, 841 (Ala. 1992). While this proposition is true – that ordinarily, foreseeability is a question of fact for the jury – this argument, alone, does not support denial of the motion. It is axiomatic that, when foreseeability must be proven at trial, a plaintiff must make sufficient allegations to support an inference of foreseeability to survive a motion to dismiss. *See e.g., Gamez v. Brevard Cnty., Fla*, 2007 WL 1626734, *10 (M.D. Fla. June 5, 2007). Specifically, for AMLA claims, such as this one, a plaintiff must plead "a detailed specification and factual description of each act

7

and omission alleged by plaintiff to render the healthcare provider liable to the plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts." ALA. CODE § 6-5-551 (1975).  Furthermore, "[a]ny complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted." (*Id.*).  Thus, the plaintiff's argument that cases addressing these issues at summary judgment are irrelevant is not persuasive.  At summary judgment, the court considers whether there is sufficient evidence to create a genuine issue of material fact for trial.  *See* FED. R. CIV. P. 56.  While the standard at the motion to dismiss stage is different, evaluating whether there are sufficient allegations to state a claim, *see* FED. R. CIV. P. 12(b)(6), at each stage the court must look at what the claim at issue requires.  For these reasons, the motion to dismiss is appropriate and could be granted if the complaint lacks sufficient allegations of foreseeability, and cases addressing the same claims at summary judgment can be helpful in determining the elements/requirements of each claim.

        **b. Whether the Complaint Includes Sufficient Allegations of Foreseeability**

The plaintiff makes several arguments to support her assertion that there are sufficient allegations that Gunter's suicide was foreseeable. (Doc. 24 at 6-10).  First, Plaintiff argues that, because Gunter's suicide occurred within the "suicide watch" cell block where she was supposed to be monitored, Defendants cannot argue her suicide was not foreseeable.  (*Id.* at 6-7).  This argument is not supported by the allegations in the complaint.  The complaint alleges that Gunter was placed in "A Block," not a "suicide cell block," and that Gunter was placed in "A Block" immediately following a physical altercation with deputies after she flooded the toilets in the general population holding cell by repeatedly flushing them. (Doc. 1 at ¶¶ 22-24).  Additionally, there are no allegations to support the inference that ACH or ACH personnel knew that deputies

had moved Gunter from the general population holding cell to a cell in A Block.

Likewise, the allegations regarding the information gained from Gunter's initial medical screening do not show that Gunter's suicide was foreseeable under the factors set forth in *Keeton*, *Keebler,* and *Patton*. Plaintiff argues that, based on Gunter's initial medical screening that ACH performed, ACH should have known Gunter was at a greater risk for suicide. Specifically, Plaintiff argues that ACH should have known that suicide attempts are higher for patients with substance abuse disorders, that a history of seizure disorders should be considered when withholding or taking benzodiazepines, and those with known psychiatric conditions are at a greater risk for severe withdrawal symptoms, including developing suicidal ideation, plan, and intent. (Doc. 24 at 10 (citing doc. 1 at ¶¶47-49). "At a greater risk" is not the standard, as this is the same argument rejected in *Keebler*. Specifically, in that case, the plaintiff's expert testified that the combined effects of alcohol and Valium posed a calculable risk that a patient may attempt suicide. *Keebler*, 531 So.2d at 845. Nevertheless, the court held that such evidence does not create an inference that the suicide should have been reasonably foreseen by the physician. *Id.* Instead, the duty of the health care provider does not include a standard of care to protect against or to prevent suicide, when there was an absence of factors that would have made the suicide foreseeable, thereby triggering such a duty. *See Patton*, 958 So. 2d at 309.

Plaintiff also asserts the Complaint includes "detailed descriptions of what ACH actually knew, should have known[,] and failed to do when breaching the standard of care." (Doc. 24 at 8). Specifically, Plaintiff points to an allegation, under Count II for deliberate indifference to medical needs pursuant to 42 U.S.C. § 1983, that "[o]n January 5, 2018 and/or January 6, 2018, Defendants had subjective knowledge that [] Gunter: . . . [s]uffered from suicidal thoughts and behaviors." (*Id.* at 9 citing doc. 1 at ¶ 58(d)). Plaintiff further alleges "Defendants also knew that

[] Gunter had a history of suicidal ideation and exhibited behaviors consistent with suicidal ideation." (*Id.* at 9-10 citing doc. 1 at ¶ 59). These statements are broad conclusions, not factual allegations. There are no facts pled related to any of this claimed "subjective knowledge" by ACH, Nurse Gay, or Nurse Gardiner that Gunter "had a history of suicidal ideation" and there are no alleged behaviors from which ACH did or could have observed to be consistent with suicidal ideation.[5] These statements are broad conclusions, not specific factual allegations that are required to support this claim. *See Key v. Mott*, No. 12-0614-KD-M, 2015 WL 58663, *5 (S.D. Ala. Jan. 5, 2015) (quoting *Weissman v. Nat'l Assoc. of Sec. Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007)) ("Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of 'entitle[ment] to relief.'"). The allegations of subjective knowledge are conclusions and insufficient to support a claim for relief.

Based on the foregoing, the plaintiff has not presented sufficient allegations to show that ACH reasonably should have anticipated that Gunter would attempt to harm herself. For this reasons, ACH's motion to dismiss is due to be **GRANTED** as to the plaintiff's ALMA claim.

### 2. Plaintiff's Deprivation of Life Without Due Process in Violation of the 14th Amendment Claim, Pursuant to 42 U.S.C. § 1983

After incorporation of all preceding paragraphs, Count III, titled "Deprivation of Life Without Due Process in Violation of the Fourteenth Amendment; 42 U.S.C. §1983," contains several paragraphs of allegations against "Defendants." (Doc. 1 at ¶¶ 66-70). Count III does not name ACH individually. However, liberally construing the complaint, the plaintiff may be

---

[5] Additionally, these two paragraphs state that "Defendants" had such subjective knowledge. (Doc. 1 at ¶¶ 58 & 59). It is unclear whether the plaintiff is referring to all defendants or the defendant named in Count II: Nurse Gay, Nurse Gardiner, Deputy Bell, Deputy Russell, Deputy Payne, and Deputy Holmes.

attempting to assert a claim for violation of the Fourteenth Amendment against ACH, specifically alleging deliberate indifference to Gunter's serious medical needs.

"[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under . . . the . . . fourteenth amendment, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir. 1989)). "The deliberate indifference standard 'requires a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." *Id.* (quoting *Popham v. City of Talladega*, 908 F.3d 1561, 1563 (11th Cir. 1990)).

To establish deliberate indifference, a plaintiff must present sufficient allegations to show that "the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence." *Id.* at 987. Moreover, "'the mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners.'" *Id.* at 986 (quoting *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994)). Absent knowledge of a detainee's suicidal tendencies, relevant caselaw has consistently held that failure to prevent suicide does not constitute deliberate indifference. *Popham*, 908 F.3d at 1564 (citing collection of cases).

A foreseeability analysis similar to the one applied to ALMA claims applies to deliberate indifference claims. "Deliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it is a question of whether a defendant was deliberately indifferent to *an individual's* mental condition and the likely consequences of that condition." *Cook v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1117 (11th Cir. 2005). As discussed above, nothing in Gunter's known psychiatric or

11

medication history or her behavior at the jail that was known to ACH, Nurse Gay, or Nurse Gardiner, would place ACH on notice that Gunter was a suicide risk or that her suicide was foreseeable.

Likewise, the plaintiff's conclusory allegations regarding subjective knowledge are insufficient to support this claim. (Doc. 1 at ¶¶ 58(d), 59). In *Key v. Mott*, the plaintiff made conclusory allegations regarding deliberate indifference concerning the defendant's alleged subjective knowledge of a risk of serious harm to the plaintiff. No. 12-0614-KD-M, 2015 WL 58663 (S.D. Ala. Jan. 5, 2015). That plaintiff alleged that sexual misconduct toward an inmate by a jail guard was reasonably foreseeable by the officer's supervisor. *Id.* at *3. In granting the motion to dismiss, the court explained as follows:

> The Court has carefully reviewed the assertions made and finds that Key has failed to allege sufficient fact to support the allegation of Defendants' deliberate indifference. Plaintiff generally states that it was the individual Defendants' policy or custom or practice of poor hiring that led to Mott's assault against her; Key asserts that Defendants hired officers without any investigation, officers with a history of problems, and officers who were incompetent. Key also repeatedly asserts that when Mott was hired the individual defendants had actual knowledge that Mott had previously been terminated from other law enforcement departments for, *inter alia*, 1) inappropriate contact with inmates; 2) requesting sexual favors from citizens in return for official assistance; and 3) sexual harassment of people under his control. However, Key fails to allege facts to show how the individual defendants knew of this prior conduct. Rather Key merely alleges that the individual defendants had actual knowledge of Mott's prior misconduct. This bare allegation is just another way of stating that the individual defendants had the requisite subjective knowledge of the risk of serious harm. "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir.2007) (quoting *Twombley*, 550 U.S. 557). Thus, the Court finds that Key's allegation of "actual knowledge" is conclusory and insufficient to state a claim for entitlement to relief.

*Key*, 2015 WL 58663 at *5. The similarly conclusory allegations in the plaintiff's complaint that "Defendants" had subjective knowledge of Gunter's "history of suicidal ideation" are insufficient

12

...

to support this claim.

Notably, only seventeen minutes elapsed between the time Gunter gave any indication that she would attempt suicide by beginning to tear her bedsheets to form a noose and when she actually committed suicide.  (Doc. 1 at ¶¶ 31-34).  There are no allegations that during this time any ACH employee knew or had reason to known Gunter was suicidal.

Based on the foregoing, the plaintiff has not presented sufficient allegations to show that ACH was deliberately indifferent to Gunter taking her own life.  Accordingly, the motion to dismiss is **GRANTED** as to the Fourteenth Amendment deliberate indifference claim against ACH.

### 3. Plaintiff's State Law *Respondent Superior*/Vicarious Liability Claim Against ACH

Plaintiff makes the following allegations to support her *Respondent Superior*/Vicarious Liability claim against ACH:

> 97. On the date of the incident forming the basis of this action, Defendants were the principal and/or employer of Nurses Kathy Gay and Sara[] Gardiner.
>
> 98. At the time of the occurrence forming the basis of the Plaintiff's Complaint, Defendant ACH was acting as the agent, servants and/or employee of Defendant.
>
> 99. At the time of the occurrence forming the basis of the Plaintiff's Complaint, Defendants Kathy Gay and Sara[] Gardiner were acting within the line and scope of their employment with Defendant.
>
> 100. As a result of the foregoing, Defendant ACH is vicariously liable to Plaintiff for the negligent, reckless, or wanton conduct of its employees, who proximately caused the injuries of Ms. Gunter.

(Doc . 1 at ¶¶ 97-100).

Supervisors, employees, and private contractors cannot be sued under §1983 simply on a theory of *respondeat superior*.  *See Kruger v. Jenne*, 164 F. Supp. 2d 1330, 1333-34 (S.D. Fla. 2000)(citing *Powell v. Shopco Laurel, Co.*, 678 F.2d 504 (4th Cir. 1982)) (explaining that the

13

supervisor who provided medical care for state inmates could not be sued under § 1983 on *respondent superior* theory); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-94 n.58 (1978). Instead, an entity providing prison medical services is liable under § 1983 only if it is established that the constitutional violation was the result of the corporation's policy or custom. *See Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997). A single incident alleged in a complaint, especially when it involved only actors below the policymaking level, generally will not result in a constitutional violation and will not state a claim. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).

As to any *respondent superior*/vicarious liability claim under the AMLA or other statute, the plaintiff has failed to state a claim. As thoroughly discussed in the preceding sections, there are no alleged facts sufficient to put any ACH employee on notice that Gunter had suicidal tendencies or was at risk for committing suicide at the jail. There are no allegations that any ACH employees knew or should have known that Gunter was at risk for committing suicide or that any ACH employee was charged or should have assumed a duty to monitor Gunter in her cell while she was incarcerated due to any risk that she would commit suicide. As such, the motion to dismiss is **GRANTED** as to the *respondent superior*/vicarious liability claim against ACH.

### B. Claims Against Nurse Gay and Nurse Gardiner

The plaintiff alleges Gay and Gardiner were nurses employed by ACH at the time of Gunter's incarceration. (Doc. 1 at ¶ 8). There are no allegations that describe the role Gay or Gardiner played during Gunter's treatment and/or care at the Jefferson County Jail. (*See* doc. 1). The only two claims asserted against Gay and Gardiner are Count 2: Deliberate Indifference to

Medical Needs: 42 U.S.C. § 1983 and Count 3: Deprivation of Life Without Due Process in Violation of the Fourteenth Amendment: 42 U.S.C. § 1983.[6] (*Id.* at 13-21).

### 1. Plaintiff's Deliberate Indifference to Medical Needs and Deprivation of Life Without Due Process in Violation of the 14th Amendment Claims, Pursuant to 42 U.S.C. § 1983

As discussed above, "'in a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under . . . the . . . fourteenth amendment, the plaintiff musts how that the jail official displayed 'deliberate indifference' to the prisoner's taking of h[er] own life.'" *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1274-75 (11th Cir. 1989). "The deliberate indifference standard 'requires a *strong likelihood* rather than a possibility that the self-infliction of harm will occur." *Id.* (quoting *Popham v. City of Talladega*, 908 F.3d 1561, 1563 (11th Cir. 1990)).

To establish deliberate indifference, a plaintiff must present sufficient allegations to show that "the defendant had (1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct that is more than mere negligence." *Id.* at 987. Moreover, "'the mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners.'" *Id.* at 986 (quoting *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994)). Absent knowledge of a detainee's suicidal tendencies, relevant caselaw has consistently held that failure to prevent suicide does not constitute deliberate indifference. *Popham*, 908 F.3d at 1564 (citing collection of cases).

---

[6] To the extent the plaintiff contends she also asserts a medical malpractice claim pursuant to ALMA against Gay or Gardiner (doc. 24 at 8), such is not reflected in the complaint. (Doc. 1 at 9-13). The complaint asserts Count 1: Violation of Alabama Medical Liability Act [against] Advanced Correctional Healthcare, Inc. (*Id.* at 9). Even if the plaintiff had attempted to assert an ALMA claim against Gay or Gardiner, such a claim would fail to state a claim, as there are insufficient allegations jof foreseeability (as thoroughly discussed above).

There are simply no specific allegations regarding Gay or Gardiner to support either Fourteenth Amendment claim.  Instead, the only allegations attributable to Gay or Gardiner are the general allegations in Count 2 that "[o]n January 5, 2018 and/or January 6, 2018, Defendants had subjective knowledge that [] Gunter: . . . [s]uffered from suicidal thoughts and behaviors" and that ""Defendants also knew that [] Gunter had a history of suicidal ideation and exhibited behaviors consistent with suicidal ideation."  (Doc. 1 at 9-10 citing doc. 1 at ¶¶ 58(d), 59).  As discussed above, such conclusory allegations, without specific allegations to provide a factual basis, are insufficient to support a claim.  *See Key v. Mott*, No. 12-0614-KD-M, 2015 WL 58663, *5 (S.D. Ala. Jan. 5, 2015) (quoting *Weissman v. Nat'l Assoc. of Sec. Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007)) ("Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of 'entitle[ment] to relief.'").

### IV. Conclusion

For the reasons set forth above, the plaintiff has failed to state a claim against Defendants ACH, Gay, or Gardiner, and their motions to dismiss pursuant to Rule 12(b)(6) (docs. 17 & 34) are **GRANTED**.

DONE this 5th day of June, 2020.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE